# EXHIBIT A

STATE OF SOUTH CAROLINA

COUNTY OF CHARLESTON

Okra, LLC, and Goldfinger, Inc.,

       Plaintiffs,

   vs.

Randem, Inc., d/b/a Peach State Distributing
Company, Riley H. Mosely, III, and Elizabeth
Mosely,

       Defendants.

IN THE CIRCUIT COURT

Case No.

SUMMONS
(Non-Jury)

**TO THE DEFENDANTS NAMED ABOVE:**

YOU ARE HEREBY SUMMONED and required to answer the Complaint in this action,
a copy of which is herewith served upon you, and to serve a copy of your Answer to the said
Complaint upon the subscribers, at their office, 205 King Street, Suite 400, Post Office Box
486, Charleston, South Carolina 29402, within thirty (30) days after the service hereof,
exclusive of the day of such service; and if you fail to answer the Complaint in the time
aforesaid, a judgment by default will be rendered against you for the relief demanded in the
Complaint.

Paul A. Dominick, SC Bar No. 1718
pdominick@nexsenpruet.com
Nexsen Pruet, LLC
205 King Street, Suite 400 (29401)
P.O. Box 486
Charleston, SC 29402
Telephone: 843.577.9440
Fax: 843.720.1777

Val H. Stieglitz, SC Bar No. 5356
vstieglitz@nexsenpruet.com
Nexsen Pruet, LLC
1230 Main Street, Suite 700
Post Office Drawer 2426
Columbia, SC 29202
Telephone: 803.253.8262
Fax: 803.727.1496

*Attorneys for Plaintiffs, Okra, LLC and Goldfinger, Inc.*

November 29, 2017
Charleston, South Carolina

2

STATE OF SOUTH CAROLINA

COUNTY OF CHARLESTON

Okra, LLC, and Goldfinger, Inc.,

        Plaintiffs,

    vs.

Randem, Inc., d/b/a Peach State Distributing
Company, Riley H. Mosely, III, and Elizabeth
Mosely,

        Defendants.

IN THE CIRCUIT COURT

Case No.

**COMPLAINT**
**(Declaratory Judgment)**
**(Non-Jury)**

The Plaintiffs, Okra, LLC ("Okra"), and Goldfinger, Inc. ("Goldfinger") hereby complain against the Defendants Randem, Inc., d/b/a Peach State Distributing Company ("Randem"), Riley H. Mosely, III (R. Mosely) and Elizabeth Moseley (E. Mosely), as follows:

    1.    Okra and Goldfinger are business entities organized and existing under the laws of the State of South Carolina, with their principal places of business in Charleston County, South Carolina.

    2.    Randem is a business entity organized and existing under the laws of the State of Georgia, with its principal place of business in Georgia and with significant contacts to South Carolina. R. Mosely and E. Mosely are, upon information and belief, citizens and residents of the State of Georgia, with significant contacts in and with the State of South Carolina.

    3.    Defendants R. Mosely and E. Mosely are owners, officers, and managers of Randem, personally directed and participated in the wrongful conduct described herein, and are therefore personally liable therefor.

4.    This Court has personal jurisdiction over the parties hereto, has subject matter jurisdiction with respect to this matter, and venue is proper in this forum.

## FOR A FIRST CAUSE OF ACTION

5.    The Plaintiffs are entitled to a Declaratory Judgment, under SCRCP 57 and S.C. Code Ann. § 15-53-10, *et. seq.* As described below, a real, actual, and concrete controversy exists between the parties as to their respective rights and obligations, such that it is proper under law for this Court to issue its declaration with respect to these rights and obligations.

6. ·    The Plaintiffs manufacture and/or distribute high quality LCD / LED monitors. These products are sold to a variety of customers and distributors, including Randem. They also sell, and/or wish to sell, to H. Betti Industries, Inc., and affiliates ("Betson"), a longtime customer.

7.    The Defendants have asserted that a certain document executed on or about March 28, 2017, and attached hereto as **Exhibit "A,"** constitutes a valid, binding, enforceable contract, barring the Plaintiffs from making any sales to Betson (or others, except as provided in the document). The Defendants have asserted this position not only directly to Plaintiffs, but also to Betson, through a letter dated November 6, 2017 (attached hereto as **Exhibit "B"**) and sent to Betson, threatening legal action based upon its construction of the document at **Exhibit "A."**

8.    The Plaintiffs dispute the Defendants' construction of the said document, assert that it does not qualify as a binding contract; that if it does so qualify, they are entitled to sell to Betson under its terms, and that any construction prohibiting the Plaintiffs from selling to Betson would be unenforceable and illegal, in violation of public policy and established rules of contract construction, as a potential horizontal restraint of trade, per se

illegal under the U.S. antitrust laws, and/or as an unfair business arrangement under the applicable law.

9.   The Plaintiffs are entitled to, and seek, a Declaration and Order from this Court as follows:

(a)   The Plaintiffs have the unrestricted right to sell its products to Betson, and others, and Betson has the unrestricted right to purchase products from the Plaintiffs, at their own discretion;

(b)   To the extent that the document at **Exhibit "A"** purports to bar the Plaintiffs from selling its products to Betson, or to bar Betson from purchasing from the Plaintiffs, such a construction is void, illegal, and unenforceable;

(c)   The Defendants' actions seeking to prevent Betson from purchasing from the Plaintiffs, and their threats of legal action against Betson and Plaintiffs based upon the same, have no legitimate basis in the document at **Exhibit "A,"** or otherwise, and are illegal;

(d)   The Plaintiffs are entitled to recover their attorney's fees and costs in connection herewith.

## FOR A SECOND CAUSE OF ACTION

10.   A valid contract exists between Okra Holdings Inc., and H. Betti Industries, Inc., a copy of which is attached hereto as **Exhibit "C."** The Defendants have knowledge of this contract.

11.   The letter attached hereto as **Exhibit "B"** is a direct attempt to interfere with the contractual relationship established by **Exhibit "C."**

12.   Defendants H. Mosely and E. Mosely have made specific statements that their intent in directing the sending of the letter at **Exhibit "B"** was to disrupt the business of the recipient (Betson) by disrupting its licensure status with applicable regulatory authorities. Betson is the Plaintiffs' most significant customer, such that disrupting Betson's business inevitably causes substantial economic harm to the Plaintiffs. Defendants directed the

3

sending of the letter at **Exhibit "B"** for precisely this purpose – to damage the Plaintiffs through damaging Betson.

13.    The Defendants had knowledge of the Plaintiffs' business relationship and contract with Betson; intentionally and maliciously took actions to interfere with the same; without justification; in reckless disregard of the rights of the Plaintiffs, thereby causing damage to the Plaintiffs.

14.    The actions of the Defendants as set forth herein constitute tortuous interference with contractual relations, and the Defendants are liable, jointly and severally, for all actual damages sustained by the Plaintiffs, as well as punitive damages.

WHEREFORE, having complained of the Defendants herein, the Plaintiffs pray that the Court issue its Declaration and Order as set forth above, award the Plaintiffs their attorney's fees and costs, and for such other and further relief as the Court deems just and proper. Pursuant to SCRCP 57, the Plaintiffs also request that the Court provide a speedy hearing with respect to the First Cause of Action herein.

4

Paul A. Dominick, SC Bar No. 1718
pdominick@nexsenpruet.com
Nexsen Pruet, LLC
205 King Street, Suite 400 (29401)
P.O. Box 486
Charleston, SC 29402
Telephone: 843.577.9440
Fax: 843.720.1777

Val H. Stieglitz, SC Bar No. 5356
vstieglitz@nexsenpruet.com
Nexsen Pruet, LLC
1230 Main Street, Suite 700
Post Office Drawer 2426
Columbia, SC 29202
Telephone: 803.253.8262
Fax: 803.727.1496

*Attorneys for Plaintiffs, Okra, LLC and Goldfinger, Inc.*

November 29, 2017
Charleston, South Carolina

Distributing Company.

For a period of three years, after the effective date of this agreement, Denis Lagace and Daniel Hartmann will not directly or indirectly engage in any business related to the sale of LCDs/LEDs monitors except for the following competitors: Great Lakes Amusements and Banilla Games. The sale of LCDs/LEDs to Betson Industries will be limited to 23" LCDs/LEDs until their contract with Spec International is complete.

Directly or indirectly includes but not limited to (i) engaging in a business as an owner, partner or agent. (ii) becoming an employee of a third party that engages in the sale of LCDs/LED monitors. (iii) soliciting of any customers for the benefit of a third party that is engaged in the sale of LCDs/LEDs monitors.

For a period three years after the date of this agreement, Denis Lagace and Daniel Hartmann will not directly or indirectly solicit sales, license or provide the same or similar products or services to any customer except the three noted above.

In consideration for the for the commitment and obligation made by Denis Lagace and Daniel Hartmann, Randem Inc, dba Peach State Distributing Company will purchase a 40 foot container within three days of the date of this agreement and will continue to purchase 40 foot containers and/or 20 container in order to supply the demands of customers.

This agreement shall be governed by the laws of the state of Georgia.

Protected Party

Riley H. Moseley III
President

Non-Compete Party

Denis Lagace, Vice President

Daniel Hartmann, President



EXHIBIT
A

# Wallace H. Jordan, Jr., P.C.
## Attorney at Law

626 West Evans Street
Post Office Box 2010
Florence, South Carolina 29503-2010

Wallace H. Jordan, Jr.
jordanlawsc@gmail.com

Telephone: (843) 662-4474
Facsimile: (843) 662-6024

November 6, 2017

<u>Via US Mail. Certified. Return Receipt Requested</u>
Mr. Robert Geschine, President
Betson Imperial
303 Paterson Plank Road.
Carlstadt, NJ 07072

Mr. Richard Zayas-Bazan, Vice President
Betson Imperial
303 Paterson Plank Road.
Carlstadt, NJ 07072

RE:     Violation of the Non-Compete Agreement between Goldfinger, Inc. and Randem,
Inc. d/b/a Peach State Distributing Company
My File No.: 16-115

Dear Gentlemen:

I have been contacted by my clients, Randem, Inc. d/b/a Peach State Distributing
Company. On March 28, 2017 Randem, Inc. dba Peach State Distributing Co. entered into a
contract with Absolute Tech Services and Goldfinger/Daniel Hartman. The contract stipulates
the only LCDs/LED monitors sold to Betson Industries will be limited to 23" LCDs/LEDs until
their contract with Spec International is complete.

Your company was made aware of this contract by informing Richard Zayas-Bazan, Vice
President of Betson Industries in a meeting held in Peach States office the first week of April,
2017. Your company's tortious interference with the said contract is causing a breach in the
contract with Goldfinger/ Daniel Hartman and indirectly hindering my client's ability to fulfil
said contract. Your company is deliberately causing this breach by advertising in newspapers a
list of eight different sizes of LCDs, none of which is sold to Spec International.



Furthermore, in the advertisement, Betson Industries list they are the MASTER EXCLUSIVE DISTRIBUTOR. This interference has caused Peach State Distributing hundreds of thousands of dollars in sales and tens of thousands of dollars in profits.

We are demanding that you immediately cease and desist of all advertising, including websites, of all Goldfinger products except those outlines in the contract. Furthermore, you are to cease and desist of all future orders or shipments relating to Goldfinger LCDs. Your sales people should no longer market, nor offer Goldfinger LCDs except to Spec International.

Failure to comply with this cease and desist will result in Peach State Distributing taking any and all measures necessary to stop the interference Betson Industries has created with Peach State's agreement with Goldfinger and Absolute Tech Services.

In addition, please provide a list of product models and quantity that have been ordered and sold in order to establish the amount of lost revenue Peach State Distributing has suffered since the signing of the Agreement. Please provide this information within Ten (10) days from the date of receipt of this correspondence.

Thank you for your prompt attention to this matter, as time is of the essence. Should you have any questions, please do not hesitate to contact me.

With kind regards, I am,

Sincerely,

Wallace (Jay) Jordan, Jr.

WJJ/kos

cc:    Daniel Hartman
       Dennis Legace

# Distributor Agreement

THIS AGREEMENT is entered into effect on this 7th day of April, 2017, between Okra Holdings Inc., ("Manufacturer") a corporation duly organized under the laws in South Carolina and H. Betti Industries, Inc., ("Distributor"), a corporation duly organized and headquartered in New Jersey.

Hereinafter

WHERE AS, Okra Holdings, Inc. is the Inventor, developer and Manufacturer of Goldfinger Touch Screen Monitors, Phoenix, Card Readers, POS systems, counter top and other electronic equipment.

AND

WHERE AS, H. Betti Industries, Inc. is a Distributor seeking to market, promote, sell and service Goldfinger Brand Touch Screen Monitors and related products upon the terms and conditions set forth herein:

NOW, THEREFORE, in consideration of the property and the joint agreements herein contained, the parties hereto agree as follows (hereinafter for the purpose of brevity sometimes referred to as "Manufacturer" and "Distributor"):

1.     Manufacturer grants the Distributor the title of Master Distributor and the exclusive right to sell Goldfinger Monitors, Phoenix monitors, Card Readers, POS systems, counter top and other electronic equipment in the Americas. The card readers and POS systems business plan will be discussed at a future date when the product is ready to be deployed.

2.     All sales of Goldfinger brand monitors will be conducted by Distributor with the exception of Absolute Tech Services that will purchase directly from the Manufacturer for sole use of the following customers:

o     Banilla / Greover Gaming

o     Great Lakes Amusement

o     Peach State

o     VSR



Okra Holdings, Inc. agrees not to offer and sell to Absolute Tech Services at a lower price than H. Betti Industries, Inc. pricing. No additional accounts can be given to Absolute Tech Services without the agreement of the distributor. Absolute Tech Services is to refer to H. Betti Industries any company, not aforementioned above, that is seeking to purchase, service or otherwise inquire about Goldfinger Monitors, Phoenix, Card Readers, POS systems, counter top and other electronic equipment in the Americas.

3.

An Addendum to this agreement, "as attached", establishes pricing for a term no less than 1 year from date of this signed Distributor Agreement. After the first year, any price changes must be submitted in writing and agreed upon by both parties for this agreement to remain in force. The entire Agreement between the Manufacturer and the Distributor is set forth herein and any amendment or modification shall be in writing and shall be executed by duly authorized representatives in the same manner as this Agreement. The provisions of this Agreement are severable, and if any one or more such provisions are determined to be illegal or otherwise unenforceable, in whole or in part, under the laws of any jurisdiction, the remaining provisions or portions hereof shall, nevertheless, be binding on and enforceable by and between the parties hereto.

4.

If an OEM, in the Americas that is not aforementioned in this agreement, requests to buy from Manufacturer direct, and does not want to buy via Distributor, Distributor is entitled to a 15% commission on any direct sales.

5.

Payment Terms. All invoices must be paid prior to shipment.  Manufacturer accepts bank wire transfer or US checks (no fees) as method of payment.

6.

All sales of Manufacturer's Products to Distributor shall be made pursuant to this Agreement. All prices are Ex-Work, FAS Manufacturer's plant. Manufacturer agrees to properly pack all items for shipment. Risk of loss due to damage or destruction of Manufacturer's Products shall be borne by Distributor after delivery to the carrier for shipment. Distributor reserves the right to select and arrange the shipping company to be used.

7.

Distributor will at all times maintain adequate inventories of Manufacturer's Products and will perform a first time buy of 1,500 combined units to initiate this agreement. After a 6 month evaluation period, Distributor agrees to purchase a minimum average of one 40 foot container of product per month.

8.

Distributor will promote vigorously and effectively the sale of Manufacturer's Products through all channels of distribution within the Americas. Distributor will use its best efforts to sell Manufacturer's Products to aggressive, reputable, and financially responsible customers providing satisfactory consumer service throughout Distributor's primary marketing area. Distributor acknowledges its intent to concentrate its marketing of the Manufacturer's Products in its Primary Marketing Area. Manufacturer will provide Distributor with merchandising assistance from time to time in the form of advertising programs, product and sales training and sales promotions. Distributor agrees to fully use such assistance in carrying out Manufacturer's merchandising sales promotion policies.

9.

Manufacturer will cooperate with Distributor in providing continuous and effective advertising and promotion of the Manufacturer's Product in these markets. Nothing herein shall prevent Distributor from independently advertise and marketing of the Manufacturer's Product, provided the form and content of the advertising or marketing materials are agreeable to the Manufacturer. Distributor will always present the Manufacturer's products under the manufacturer's name and will not attempt to Private Label, unless approved by Manufacturer.

10.     It is agreed and acknowledged that the Distributor is an independent contractor and shall only hold itself out as such with respect to Manufacturer. Nothing in this Agreement shall be considered to constitute the Distributor as the partner, employee, joint venture, franchisee, legal representative or agent of the Manufacturer and the Distributor shall not represent itself as any of the foregoing. In furtherance of the foregoing, in no event shall Distributor have any authority to assume or create any liability or obligation, express or implied, on behalf of Manufacturer, and any representation to the contrary will constitute a material breach of this Agreement. Distributor shall assume full responsibility for its Representatives under the applicable Workmen's Compensation, Unemployment Insurance, Employers Liability and other Social Security Acts and similar foreign laws. In the conduct of its services hereunder, Distributor and/or its Representatives, shall (a) safeguard and promote the reputations of Manufacturer and Brand products, (b) refrain from any conduct which might be harmful to such reputations or the marketing of Manufacturer's Products and (c) avoid all illegal, unfair, deceptive, misleading or unethical practices.

11.     In the event that any of Manufacturer's Products are proved to be defective, Manufacturer will replace the defective product free of charge and freight cost to Distributor.  Manufacturer shall provide Distributor information with respect to Manufacturer's limited warranty extended to original consumer of Manufacturer's Product. This Product Warranty is for a one (1) year period, from date of sales to end customer.

12.     Manufacturer agrees to protect Distributor and hold Distributor harmless from any loss or claim arising out of inherent defects in any of Manufacturer's Products existing at the time such product is sold by Manufacturer to Distributor, provided that Distributor gives Manufacturer immediate notice of any such loss or claim and cooperate fully with Manufacturer in the handling thereof.

13.     Distributor agrees to protect Manufacturer and hold Manufacturer harmless from any loss or claim arising out of the negligence of Distributor, agents, employees or representatives in the installation, use, sale or servicing of Manufacturer's Products or arising out of any representation or warranty made by Distributor.

14.     Manufacturer will employ its best efforts to fill Distributor's orders promptly once they are placed. Monthly ordered containers must ship within 30 days of placing the order. Special ordered containers must ship within 45 days of placing the order. Distributor reserves the right to cancel an order for failure to ship it on-time. Both domestic and International orders are delivered on a first serve basis.

15.     Distributor will not use, authorize or permit the use of, the name "Goldfinger", "Phoenix", or any other trademark or trade name owned by Manufacturer as part of it firm, corporate or business name in any way, unless approved in writing by Manufacturer. Distributor shall not contest the right of Manufacturer to exclusive use any trademark or trade name used or claimed by Manufacturer. Distributor may, subject to Manufacturer's prior written approval, utilize Manufacturer's name, trademarks or logos in advertising on stationery and business cards.

16.     Neither Distributor nor Manufacturer shall have any right to enter into any contract or commitment in the name of, or on behalf of the other, or to bind the other in any respect whatsoever.

17. Notwithstanding any of the above, Manufacturer may terminate this Agreement upon written notice to Distributor, upon any of the following events: (1) failure of Distributor to fulfill or perform an one of the duties, obligations or responsibilities of Distributor in this Agreement, which failure is not cured with ten (10) days written notice from Manufacturer; (2) any assignment or attempted assignment by Distributor of any interest in this agreement or delegation of Distributors obligations without Manufacturer's prior written consent; (3) any sale, transfer or relinquishment, voluntary or involuntary, by operation of law or otherwise, of any material interest in the direct or indirect ownersl or any change in the management of Distributor; (4) failure of Distributor for any reason to function ir the ordinary course of business; (5) conviction in a court of competent.

18. Notwithstanding any of the above, Distributor may terminate this Agreement upon written notice to Manufacturer, upon any of the following events: (1) failure of Manufacturer to fulfill or perform any one of the duties, obligations or responsibilities in this Agreement, which failure is not cured with ten (10) days written notice from Distributor.

19. This Agreement shall be deemed to have been made in, and shall be construed pursuant to th laws of, the State of New Jersey, without regard to any conflicts of law considerations, and any action proceeding arising out of or related to this Agreement shall be brought in a court of competent jurisdiction in the State of New Jersey. The parties hereby consent to such exclusive jurisdiction and venue.

20. Obligations on Termination. On termination of this Agreement, Distributor shall cease to be authorized distributor of Manufacturer and:.

All unshipped orders shall be cancelled without liability of either party to the other;

Distributor will resell and deliver to Manufacturer on demand, free and clear of liens and encumbrance such of Manufacturer's Products and materials bearing Manufacturer's name as Manufacturer shall elect to repurchase, contingent upon inspection, at a mutually agreed upon price , but not in excess of Manufacturer's current base price to distributors for such products and materials, provided that Manufacturer shall not be obligated to pay Distributor for any item originally provided free of charge; and Neither party shall be liable to the other because of such termination for compensation, reimbursement or damages on account of the loss of prospective profits or anticipated sales, or on account of expenditures, investments, lease or commitments in connection with the business or good will of Manufacturer or Distributor or for any other reason whatsoever growing out of such terminatio

21.    Any notice required by this Agreement or given in connection with it, shall be in writing and shall be given to the appropriate party be personal delivery or by certified mail, postage prepaid, or recognized overnight delivery services;

If to Manufacturer:

Okra Holdings Inc.

2202 North St.

Beaufort, SC 29902 USA

If to Distributor:

H. Betti Industries, Inc.

303 Patterson Plank Road

Carlstadt, NJ 07072 USA

Okra Holdings, Inc.

By: _____

Name: Marshall Hartman

Title: Vice President

Address: 2202 North St.

Beaufort, SC 7A902.

Phone: _____, Fax: _____

H. Betti Industries, Inc. (Distributor)

By: _____

Name: Robert Geschier

Title: President

Address: 303 Patterson Plank Rd.

Carlstadt, NJ. 07072

Phone: _____, Fax: _____

IN WITNESS WHEREOF, and intending to be legally bound, the parties hereto have hereunto affixed their hands and seals the day and year first above written.

DATE: _DEC 4 2017_

TO: _JAY JORDAN_          PAGES _12_

FROM: _Riley Moseley_

INSTRUCTIONS: _Please Forward to_
_____ _Fitz_

_____

THANK YOU,

PEACH STATE DIST.

404-366-8000

404-366-8811    FAX

EMAIL  psdc@mindspring.com

# RUSH SERVICE





20429158

### MAIL TO

> **Jasmine Saxon**
> P.O. Box 741193
> Riverdale, GA 30296

### SERVICE TO
**Riley H Mosely, III**
271 Lake Mirror Rd
Forest Park, GA 30297

**SERVE BY** 12/01/2017
**NO SERVICE BEFORE** 12/01/2017



Consult your **ABC Mobile** app
prior to each service attempt for
up-to-date info.



*OTHER SERVICES
AT THIS ADDRESS*



*OUT-OF-STATE
COURT
REQUIREMENTS*

📁 **DOCUMENTS**

Civil Action Coversheet; Summons; Complaint; Exhibit

⚠ **SPECIAL HANDLING**

Additional Special Handling Information: YOU
CANNOT ATTEMPT TO SERVE THIS UNTIL
FRIDAY 12/1 AND IT MUST BE SERVED
FRIDAY 12/1

---

CUSTOMER **Nexsen Pruet**
REF **Okra, LLC vs Random**
COURT **SC Common Pleas for Charleston County**
CASE# **2017CP1006109**
TITLE **Okra, LLC and Goldfinger, Inc. vs. Random, Inc. d/b/a Peach States
Distributing Company; et.al.**

**Need help?**
206-521-2967
abclegal.com



11/30/2017

IN THE COURT OF COMMON PLEAS OF THE STATE OF SOUTH CAROLINA FOR CHARLESTON COUNTY

| | |
|---|---|
| **Okra, LLC and Goldfinger, Inc.** | DOCKET NO: **2017CP1006109** |
| Plaintiff/Petitioner | FILING DATE: **11/29/2017** |
| vs. | |
| **Randem, Inc. d/b/a Peach States Distributing Company; et.al.** | AFFIDAVIT OF SERVICE OF:  Civil Action Coversheet; Summons; Complaint; Exhibit |
| Defendant/Respondent | |

The undersigned, being first duly sworn, on oath deposes and says: That s(he) is now and at all times herein mentioned was a citizen of the United States, over the age of eighteen, not an officer of a plaintiff corporation, not a party to nor interested in the above entitled action, has the authority to serve pleadings in the State named below, and is competent to be a witness therein.

On the **4th day of December, 2017**, at **2:44 PM**, at the address of **271 Lake Mirror Rd, Forest Park, Clayton County, GA 30297**; this affiant served the above described documents upon **Randem, Inc. d/b/a Peach States Distributing Company** by then and there personally delivering 1 true and correct copy(ies) thereof, by then presenting to and leaving the same with **Riley H Mosely, III, CEO, Riley Moseley III, who accepted service, with identity confirmed by subject stating their name, a gray-haired white male approx. 55-65 years of age, 5'8"-5'10" tall and weighing 160-180 lbs.**.

Is defendant active duty military?  (✓) NO  ( ) YES

Is the place of service the dwelling house or usual abode for the party being served?  (✓) NO  ( ) YES

Is the Subject Property a Mobile Home?  (✓) NO  ( ) YES
Is a Mobile Home VIN # visible?  ( ) NO  ( ) YES    VIN #: _____

DATED this 4th day of December, 2017.

_____
**Jasmine Saxon, Reg. # N/A, Superior Court of Henry County**

SUBSCRIBED AND SWORN to before me this 4th day of December, 20 17.

_____
NOTARY PUBLIC in and for the State of Georgia
My commission expires 7-18-19

JULY 18, 2019
CLAYTON CO., GEORGIA
NOTARY PUBLIC

BY
JULIE A. ARMSTRONG
CLERK OF COURT
2017 DEC 11 PM 2:42




IN THE COURT OF COMMON PLEAS OF THE STATE OF SOUTH CAROLINA FOR CHARLESTON COUNTY

| | |
|---|---|
| **Okra, LLC and Goldfinger, Inc.** | DOCKET NO: **2017CP1006109** |
| Plaintiff/Petitioner | FILING DATE: **11/29/2017** |
| VS. | |
| **Randem, Inc. d/b/a Peach States Distributing Company; et.al.** | AFFIDAVIT OF SERVICE OF: **Civil Action Coversheet; Summons; Complaint; Exhibit** |
| Defendant/Respondent | |

The undersigned, being first duly sworn, on oath deposes and says: That s(he) is now and at all times herein mentioned was a citizen of the United States, over the age of eighteen, not an officer of a plaintiff corporation, not a party to nor interested in the above entitled action, has the authority to serve pleadings in the State named below, and is competent to be a witness therein.

On the **4th day of December, 2017**, at **2:44 PM**, at the address of **271 Lake Mirror Rd, Forest Park, Clayton County, GA 30297**; this affiant served the above described documents upon **Elizabeth Mosely** by then and there personally delivering 1 true and correct copy(ies) thereof, by then presenting to and leaving the same with **Riley H Mosely, III, SPOUSE, Riley Moseley III, who accepted service, with identity confirmed by subject stating their name, a gray-haired white male approx. 55-65 years of age, 5'8"-5'10" tall and weighing 160-180 lbs.**.

Is defendant active duty military?  ( ✓ ) NO   ( ) YES

Is the place of service the dwelling house or usual abode for the party being served?  ( ✓ ) NO   ( ) YES

Is the Subject Property a Mobile Home?  ( ✓ ) NO   ( ) YES
Is a Mobile Home VIN # visible?  ( ) NO   ( ) YES       VIN #: _____

DATED this 4th day of December, 2017.

_____
Jasmine Saxon, Reg. # N/A, Superior Court of Henry County

SUBSCRIBED AND SWORN to before me this 4th day of December, 20 17.

_____
NOTARY PUBLIC in and for the state of Georgia
My commission expires _____

JULY 18, 2019
CLAYTON CO., GEORGIA
NOTARY PUBLIC

 

IN THE COURT OF COMMON PLEAS OF THE STATE OF SOUTH CAROLINA FOR CHARLESTON COUNTY

| | |
|---|---|
| Okra, LLC and Goldfinger, Inc. | DOCKET NO: **2017CP1006109** |
| Plaintiff/Petitioner | FILING DATE: **11/29/2017** |
| vs. | |
| Randem, Inc. d/b/a Peach States Distributing Company; et.al. | AFFIDAVIT OF SERVICE OF: |
| | Civil Action Coversheet; Summons; Complaint; Exhibit |
| Defendant/Respondent | |

The undersigned, being first duly sworn, on oath deposes and says: That s(he) is now and at all times herein mentioned was a citizen of the United States, over the age of eighteen, not an officer of a plaintiff corporation, not a party to nor interested in the above entitled action, has the authority to serve pleadings in the State named below, and is competent to be a witness therein.

On the **4th day of December, 2017**, at **2:44 PM**, at the address of **271 Lake Mirror Rd, Forest Park, Clayton County, GA 30297**; this affiant served the above described documents upon **Riley H Mosely, III** by then and there personally delivering **1** true and correct copy(ies) thereof, by then presenting to and leaving the same with **Riley H Mosely, III, Who accepted service, with identity confirmed by subject stating their name, a gray-haired white male approx. 55-65 years of age, 5'8"-5'10" tall and weighing 160-180 lbs. I went to the Defendant's listed place of business. When I knocked on the door, a Caucasian male came to the door. I ask for the Defendants by name and he told me to wait a minute. Within a minute, an older gentleman came to the door. He informed me he was Riley and he accepted all documents on behalf of all three Defendants.**.

Is defendant active duty military? ( ✓ )NO  ( ) YES

Is the place of service the dwelling house or usual abode for the party being served? ( ✓ )NO  ( ) YES

Is the Subject Property a Mobile Home? ( ✓ )NO  ( ) YES
Is a Mobile Home VIN # visible? ( ) NO  ( ) YES     VIN #: _____

DATED this 4th day of December, 2017.

_____
Jasmine Saxon, Reg. # N/A, Superior Court of Henry County

SUBSCRIBED AND SWORN to before me this 4th day of December, 20 17.

_____
NOTARY PUBLIC in and for the State of Georgia
My commission expires 7-18-19

REF: **Okra, LLC vs Randem**
FOR: **Nexsen Pruet**

PAGE 1 OF 1
ORIGINAL AFFIDAVIT OF SERVICE




Tracking #: **0020491700**

STATE OF SOUTH CAROLINA )

COUNTY OF CHARLESTON )

OKRA, LLC, and GOLDFINGER, INC. )
                         **Plaintiff(s)** )

                 **vs.** )

RANDEM, INC., d/b/a PEACH STATE )
DISTRIBUTING COMPANY; RILEY H. )
MOSELY, III, and ELIZABETH MOSELY, )

                   **Defendant(s)** )

Submitted By: Paul A. Dominick and Val H. Stieglitz
Address: Nexsen Pruet, LLC, PO Box 486
Charleston, SC 29402

IN THE COURT OF COMMON PLEAS

CIVIL ACTION COVERSHEET

2017-CP- 10 - 6109

| | |
|---|---|
| SC Bar #: | 0577 and 5356 |
| Telephone #: | 843.577.9440 |
| Fax #: | 843.720.1777 |
| E-mail: | pdominick@nexsenpruet.com and vstieglitz@nexsenpruet.com |

NOTE: The coversheet and information contained herein neither replaces nor supplements the filing and service of pleadings or other papers as required by law. This form is required for the use of the Clerk of Court for the purpose of docketing. It must be filled out completely, signed, and dated. A copy of this coversheet must be served on the defendant(s) along with the Summons and Complaint.

## DOCKETING INFORMATION (Check all that apply)
*If Action is Judgment/Settlement do not complete

- [ ] JURY TRIAL demanded in complaint.
- [x] NON-JURY TRIAL demanded in complaint.
- [ ] This case is subject to ARBITRATION pursuant to the Court Annexed Alternative Dispute Resolution Rules.
- [x] This case is subject to MEDIATION pursuant to the Court Annexed Alternative Dispute Resolution Rules.
- [ ] This case is exempt from ADR. (Proof of ADR/Exemption Attached)

## NATURE OF ACTION (Check One Box Below)

**Contracts**
- [ ] Constructions (100)
- [ ] Debt Collection (110)
- [ ] Employment (120)
- [ ] General (130)
- [ ] Breach of Contract (140)
- [x] Other (199)

**Torts - Professional Malpractice**
- [ ] Dental Malpractice (200)
- [ ] Legal Malpractice (210)
- [ ] Medical Malpractice (220)
- Previous Notice of Intent Case #
  20 _-NI- ____
- [ ] Notice/ File Med Mal (230)
- [ ] Other (299)

**Torts – Personal Injury**
- [ ] Assault/Slander/Libel (300)
- [ ] Conversion (310)
- [ ] Motor Vehicle Accident (320)
- [ ] Premises Liability (330)
- [ ] Products Liability (340)
- [ ] Personal Injury (350)
- [ ] Wrongful Death (360)
- [ ] Other (399)

**Real Property**
- [ ] Claim & Delivery (400)
- [ ] Condemnation (410)
- [ ] Foreclosure (420)
- [ ] Mechanic's Lien (430)
- [ ] Partition (440)
- [ ] Possession (450)
- [ ] Building Code Violation (460)
- [ ] Other (499)

**Inmate Petitions**
- [ ] PCR (500)
- [ ] Mandamus (520)
- [ ] Habeas Corpus (530)
- [ ] Other (599)

**Administrative Law/Relief**
- [ ] Reinstate Drv. License (800)
- [ ] Judicial Review (810)
- [ ] Relief (820)
- [ ] Permanent Injunction (830)
- [ ] Forfeiture-Petition (840)
- [ ] Forfeiture—Consent Order (850)
- [ ] Other (899)

**Judgments/Settlements**
- [ ] Death Settlement (700)
- [ ] Foreign Judgment (710)
- [ ] Magistrate's Judgment (720)
- [ ] Minor Settlement (730)
- [ ] Transcript Judgment (740)
- [ ] Lis Pendens (750)
- [ ] Transfer of Structured Settlement Payment Rights Application (760)

**Appeals**
- [ ] Arbitration (900)
- [ ] Magistrate-Civil (910)
- [ ] Magistrate-Criminal (920)
- [ ] Municipal (930)
- [ ] Probate Court (940)
- [ ] SCDOT (950)
- [ ] Worker's Comp (960)
- [ ] Zoning Board (970)
- [ ] Public Service Comm. (990)

**Special/Complex /Other**
- [ ] Environmental (600)
- [ ] Automobile Arb. (610)
- [ ] Medical (620)
- [ ] Other (699)
- [ ] Pharmaceuticals (630)
- [ ] Unfair Trade Practices (640)
- [ ] Out-of-State Depositions (650)
- [ ] Motion to Quash Subpoena in an Out-of-County Action (660)
- [x] Sexual Predator (510)

- [ ] Confession of Judgment (770)
- [ ] Petition for Workers Compensation Settlement Approval (780)
- [ ] Other (799)

- [ ] Employment Security Comm (991)
- [ ] Other (999)

**Submitting Party Signature:**

**Date:** November 29, 2017

Note: Frivolous civil proceedings may be subject to sanctions pursuant to SCRCP, Rule 11, and the South Carolina Frivolous Civil Proceedings Sanctions Act, S.C. Code Ann. §15-36-10 et. seq.

SCCA / 234 (10/2014)